UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY REBMANN,
                         Plaintiff,

   v.                                                         21-CV-879 JLS(Sr)

ASTEC, INC. et al.,
                         Defendants.
_____

## DECISION AND ORDER

This matter was referred to the undersigned by thev Hon. John L. Sinatra, Jr, in accordance with 28 U.S.C. § 636(b), for all pretrial matters. Dkt. #11.

Plaintiff' commenced this products liability action in New York State Supreme Court, County of Erie, seeking compensation for serious injuries he sustained when his left hand became entangled in defendants' machinery during the course of his employment at Gernatt Asphalt Products, Inc. ("Gernatt"), on March 19, 2020. Dkt. #1-2; Dkt. #17-1, p.2 & Dkt. #19-2, p.2. Defendants removed the action to this Court on the basis of diversity jurisdiction. Dkt. #1.

Currently before the Court is plaintiff's motion to quash twelve non-party subpoenas pursuant to Rule 45(d)(3)(A) Federal Rules of Civil Procedure ("FRCP"), and for a protective order pursuant to FRCP 26(c)(1)(A). Dkt. #17.

## FACTUAL BACKGROUND

On October 8, 2021, plaintiff executed authorizations for release of health information pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), releasing medical records limited to plaintiff's left hand/wrist from the first date of treatment through the present. Dkt. #17-3. The authorization included release of mental health treatment, but did not include alcohol/drug treatment. Dkt. #17-3.

On December 14, 2021, by Certified Mail, Return Receipt Requested, defendants served subpoenas on the health care providers that plaintiff had authorized to release his health information. Dkt. #17-5. The subpoenas sought

> <u>any and all</u> records, including billing records, opinions, notes, x-rays, radiology reports, charts, summaries, abstracts, physical therapy notes, discharge summaries, emergency room records, consultations, operative reports, pathology reports, anesthesia records, history's and physicals, lab reports, continued care documents, psychiatric or psychological, invoices, statements, or other documents, records or information in your custody or control arising from examinations, care, treatment, counseling, or testing of the individual named above from March 19, 2011 through the present.

Dkt. #17-5, P.6. The return date for the subpoena was January 31, 2022. Dkt. #17-5, P.3. Counsel represented that

> In accord with HIPAA, 45 C.F.R. § 164.512(e), Mr. Rebmann's counsel has been provided a copy of this request.

Dkt. #17-5, p.1.

On December 14, 2021, at 5:05 pm, defendants sent an email to plaintiff's counsel attaching copies of subpoenas that were being sent out to plaintiff's medical

-2-

providers that evening. Dkt. #17-4. At 5:16 pm, plaintiff's counsel objected to the lack of notice and to the overly broad scope of the subpoenas, noting that plaintiff had provided appropriate authorizations. Dkt. #17-4, p.3.

On December 15, 2021, counsel responded that defendants had the right to discovery before the accident as such information bears on both the issue of damages and potentially liability. Dkt. #17-4, p.3. Counsel noted that the response time on the subpoenas was more than 45 days, so "[w]e have time" to confer. Dkt. #17-4, p.3. In response to plaintiff's inquiry as to whether the subpoenas had been served and, if so, request for the affidavit of service, defense counsel responded that the subpoenas

> have not been served. They were sent via U.S. Mail certified from Chattanooga late yesterday. The mailing takes 4-5 days for anything to arrive from here and then it will be weeks before we get any responses - if we are lucky.

Dkt. #17-4, p.1.

On December 16, 2021, via certified mail, defendants served subpoenas upon Valu Home Centers, where plaintiff had been employed between 2010 and 2014 and between 2014 and 2015, and Gowanda Country Club, where plaintiff had been employed between 2010 and 2018. Dkt. #17-7, pp.1 & 12. The subpoenas sought all personnel records, documentation relating to any disciplinary proceedings, text messages and emails, drug testing results, and performance reviews, as well as the identity and contact information for plaintiff's supervisors. Dkt. #17-7, pp.5 & 12. Defense counsel advised that copies of the subpoenas had "been sent concurrently to Mr. Rebmann's legal counsel." Dkt. #17-7, pp.1 & 8.

On December 16, 2021, via certified mail, defendants served a subpoena upon plaintiff's current employer, ACV Auctions, seeking personnel records, documentation relating to any disciplinary proceedings, text messages and emails, drug testing results, and performance reviews, as well as the identity and contact information for plaintiff's supervisors. Dkt. #17-7, p. 31.

On December 16, 2021, via certified mail, defendants also served subpoenas upon Canisius College for all records for plaintiff's attendance between 2012 and 2016 and upon St. Francis High School for all records for plaintiff's attendance between 2008 and 2012. Dkt. #17-7, p.16.

On December 16, 2021, at 4:52 pm. defendants sent an email to plaintiff's counsel attaching copies of subpoenas that were being sent out to plaintiff's previous employers. Dkt. #17-6, p.3. At 5:02 pm, plaintiff's counsel requested that defense counsel refrain from serving the subpoenas pending their scheduled conference on Monday. Dkt. #17-6, p.3. Defense counsel responded that they had already been mailed, but "it is highly unlikely that anyone will receive the mailings before our conferral, much less begin responding." Dkt. #17-6, p.1. Plaintiff's counsel responded that FRCP 45(a)(4) requires Notice to Other Parties Before Service and noted that this was the second occasion where subpoenas had been sent out without notice. Dkt. #17-6, p.1.

By letter dated January 12, 2022, plaintiff's counsel noted that during their conference on December 20, 2021, defendants agreed to withdraw the subpoenas and

plaintiff agreed to delay filing a motion to quash pending further discussion between the parties. Dkt. #17-8, p.2. Plaintiff's counsel noted that defendants had received medical records from one health care provider, but had agreed not to review them until the matter was resolved. Dkt. #17-8, p.2 & Dkt. #19, p.4 n.13.

On January 25, 2022, defense counsel emailed plaintiff's counsel with copies of eleven subpoenas that would be sent out via certified mail on January 31, 2022. Dkt. #17-10.

Plaintiff responded that he would file a motion to quash the subpoenas. Dkt. #17-9, pp.1-2.

Notice

FRCP 45(a)(4) provides that if a subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party. "The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things." F.R.C.P. 45 Advisory Committee note to 1991 Amendment Subdivision (b); See also F.R.C.P. 45 Advisory Committee note to 2013 Amendment Subdivision (a) ("The amendments are intended to achieve the original purpose of enabling the other parties to object or to serve a subpoena for additional materials."); See also Davis v. J.P. Morgan Chase & Co., No. 01-CV-6492, 2007 WL

142110, at *2 (W.D.N.Y. Jan. 16, 2007) (Failure to provide notice of a subpoena as required by Rule 45 prevents an opposing party from seeking a protective order before a subpoena is served upon a non-party.).

"The requirement of prior notice has been interpreted to require that notice be given prior to the issuance of the subpoena, not prior to its return date." *Murphy v. Bd. of Educ. of Rochester City Sch. Dist*., 196 F.R.D. 220, 222 (W.D.N.Y. 2000), *quoting Schweitzer v. Mulvehill*, 93 F. Supp.2d 376, 411 (S.D.N.Y. 2000). When an attorney misuses his or her power under Rule 45 to command a third-party to produce documents in a lawsuit without giving appropriate notice to the parties, public confidence in the integrity of court processes is eroded. *Murphy*, 196 F.R.D. at 227.

Service of the subpoenas upon plaintiff's counsel contemporaneously with service of the subpoenas upon the third-parties does not comply with either the plain text or the spirit of the statute. Furthermore, service of the subpoenas with knowledge of plaintiff's objections and without affording plaintiff the opportunity to resolve those objections with defense counsel or obtain relief from the Court prior to service of the subpoenas falls short of accepted ethical standards and far afield of the professional courtesy expected of counsel in this district. Plaintiff's motion to quash the subpoenas is granted for lack of compliance with FRCP 45(a)(4).

Motion to Quash/Motion for a Protective Order

In response to a motion to quash a subpoena, the party issuing the subpoena bears the initial burden of demonstrating that the information sought is relevant and material to the allegations and claims at issue in the proceedings. *Libaire v. Kaplan*, 760 F. Supp.2d 288, 291 (E.D.N.Y. 2011). *Id.* at 291. Thereafter, "the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome." *Id.* The decision whether to quash or modify a subpoena is committed to the sound discretion of the trial court. *Id.*

Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii), a court must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies, or that subjects a person to an undue burden. Whether a subpoena imposes an undue burden depends upon consideration of "relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Libaire*, 760 F. Supp.2d at 293-94 (E.D.N.Y. 2011).

[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Lemoine v. Mossberg Corp.,* 3:19-CV-1270, 2020 WL 3316119, at *1 (D. Ct. June 18, 2020), *quoting Burns v. Bank of Am.*, 03 Civ. 1685, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007). In any event, "[t]he reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)."

*Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998); *See Warnke v. CVS Corp.*, 265 F.R.D.64, 66 (E.D.N.Y. 2010). As amended in 2015, Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

The Advisory Committee Notes to the 2015 Amendment clarifies that the rule was amended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."

Pursuant to FRCP 26(c)(1)(D), the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including, *inter alia*, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. "Protection against unnecessary discovery is discretionary with the trial court and the court's rulings will be reversed only on a clear showing of abuse of discretion." *Robertson v. National Basketball Ass'n*. 622 F.2d 34, 35-36 (2d Cir. 1980).

*Medical Records*

Plaintiff argues that he has not waived privilege for medical treatment unrelated to the injuries sustained on March 19, 2020. Dkr. #17-1, p.7. Plaintiff notes that

he has provided authorizations to obtain medical records from all physical and mental health providers beginning on the first day of treatment of his injuries. Dkt. #17-1, p.7. Plaintiff further notes that he included approximately 175 pages of medical records with his initial disclosure. Dkt. #20, p.5.

Defendants argue that plaintiff's broad allegations of injury place his entire medical history in controversy, including the medical history predating his injuries. Dkt. #19, pp.4-5. Defendants seek medical records from 2011 onward. Dkt. #19, p.6. Defendants also argue that records relating to drug and alcohol use are relevant based upon plaintiff's self-reported use of both in treatment records produced. Dkt. #19, p.6. In support of this argument, defendants submit the discharge summary from Erie County Medical Center noting plaintiff's past history of: "Alcohol: social only" and "Substance Use: marijuana." Dkt. #19-2, p.2. Counsel for defendants declares that plaintiff has a known history of substance abuse and unexpectedly left the Gernatt facility for a period of time before the accident for reasons unknown, suggesting that substance abuse may have played a role in the accident. Dkt. #19-3.

Plaintiff responds that self-reporting a past history of "social alcohol" and marijuana does not warrant the overly broad discovery sought by defendants into any and all medical treatment plaintiff may have ever had for anything from 2011 to the present. Dkt. #20, pp.2-3. Plaintiff further responds that there is no evidence in the medical records produced and provided to defendants that plaintiff had ingested alcohol or illegal drugs at the time of the incident or that he was treating for substance abuse. Dkt. #20, p.3. More

specifically, plaintiff replies that medical records from Mercy Flight and two emergency rooms that treated plaintiff at the time of his injury fail to reference drug and/or substance abuse. Dkt. #20, p.7. Plaintiff's counsel declares that counsel for Gernatt recalled that plaintiff was known as a fitness enthusiast and/or body builder who was believed to use creatine, which plaintiff describes as a nutritional supplement. Dkt. #20-1.

"The waiver of the physician-patient privilege made by a party who affirmatively asserts a physical condition in its pleading does not permit discovery of information involving unrelated illnesses and treatments." *DiFrancesco v. Win-Sum Ski Corp.*, 13CV148, 2017 WL 696838, at *6 (W.D.N.Y. Feb. 22, 2017). However, defendants are entitled to full discovery regarding plaintiff's treatment history where the plaintiff has pre-existing and ongoing conditions which could reasonably be expected to impact his claim for damages. *Pokigo v. Target Corp.*, No. 13-CV-722, 2014 WL 6885905, at *2 (W.D.N.Y. Dec. 8, 2014). In the instant case, given the traumatic nature of plaintiff's physical injury, defendants' demand for any and all medical records for the nine years preceding plaintiff's injury is overbroad and the scope of plaintiff's authorizations is appropriately limited to health care providers treating that injury.

To the extent that plaintiff alleges emotional distress beyond a garden variety claim,[1] the waiver of privilege extends to mental health records, which would also

---

[1] "In 'garden variety' emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." *Olsen v. County of Nassau*, 615 F. Supp.2d 35, 46 (E.D.N.Y. 2009). A "plaintiff may withdraw or formally abandon claims for emotional distress beyond the garden variety claim in order to avoid forfeiting his psychotherapist-patient psychotherapy privilege." *Sims v. Blot*, 534 F. 3d 117, 140-141 (2d Cir. 2008), *citing Jaffe v. Redmond*, 518 U.S. 1, 15 (1996).

include potential drug or alcohol abuse records. *Manessis v. New York City Dep't of Transp.*, No. 02 VIC 359, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002). Therefore, if plaintiff is claiming more than "garden variety" emotional distress as a result of his injury, he is directed to provide an authorization for any mental health records, including drug or alcohol treatment records, for the time period extending one year prior to the date of injury through the present.

*Employment and Educational Records*

Plaintiff agrees to provide defendants with authorizations for his college transcript and dates of attendance and authorizations for date of hire and termination of his employment, as well as wage and benefit information, but argues that the scope of defendants' subpoena relating to his personnel records is overbroad and that the defendants' search for information regarding his past work performance, disciplinary history and alleged substance abuse is irrelevant and seeks inadmissible propensity evidence. Dkt. #17-1, pp.8-11.

Defendants should not be permitted "to conduct a fishing expedition in the hopes of uncovering some potentially damaging information" about plaintiff. *Peddy v. L'Oreal USA Inc.*, 18-CV-7499, 2019 WL 3926984, at *3 (Aug. 20, 2019), *quoting Ghonda v. Time Warner Cable, Inc.*, No. 16-CV-2610, 2017 WL 395111 (E.D.N.Y. Jan. 27, 2017). Furthermore, defendants' attempt to discover evidence of plaintiff's performance at school or with prior or current employers in order to suggest similar behavior at the time of injury is precluded by Rule 404(a) of the Federal Rules of Evidence, which provides that

"[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in comformity therewith . . . " See Popat v. Levy, 15-CV-1052, 2020 WL 6465449, at *5 (W.D.N.Y. Nov. 3, 2020), aff'd, 2020 WL 7040641 (W.D.N.Y. Nov. 30, 2020); Henry v. Morgan's Hotel Group, Inc., 2016 WL 303114, at *4 (S.D.N.Y. Jan. 25, 2016); Ireh v. Nassau Univ. Med. Ctr., CV 06-09, 2008 WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008), aff'd, 371 Fed. App'x 180 (2d Cir. 2010);Chamberlain v. Farmington Sav. Bank, 2007 WL 2786421, at *3 (D. Ct. Sept. 25, 2007). In other words, even if plaintiff's educational or employment records contained evidence of substance abuse, such evidence would not be admissible to suggest plaintiff was abusing substances at the time of his injury. Accordingly, plaintiff's request for a protective order is granted with respect to his prior employment with Valu Home Centers and Gowanda Country Club. As to plaintiff's current employer, plaintiff's request for a protective order is granted except to the extent that defendants seek information relating to damages.

**SO ORDERED.**

**DATED:** Buffalo, New York
June 29, 2022

_s/ H. Kenneth Schroeder, Jr._
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**